## STANDARD OPTICAL CO. v. COOK.

(Circuit Court of Appeals, Seventh Circuit.    June 19, 1916.    Rehearing Denied August 28, 1916.)

### No. 2353.

PATENTS ⊚⟶328—VALIDITY AND INFRINGEMENT—SHOOTING GLASSES.
The Cook reissue patent, No. 13,231 (original No. 946,596), for shooting glasses, conceding its validity, occupies a very narrow field, and, as so limited, *held* not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Carroll Eugene Cook against the Standard Optical Company. Decree for complainant, and defendant appeals. Reversed.

On January 18, 1910, appellee was granted a patent, No. 946,596, for an improvement in shooting glasses. The specification makes references to two former patents issued to him for shooting glasses, dated March 23, 1909, and October 12, 1909, respectively, and severally numbered 916,109 and 936,987. The object of the invention of patent No. 946,596, it is said in the specification, is "to provide an improved hinge by which the lenses are connected and also to combine with the said hinge a nose piece of such a form that the lenses will be held in the proper position in front of the eyes." Two claims were allowed, which read as follows, viz.:

"1. The combination with shooting glass lenses, of a nose piece, a supporting post rising therefrom and arranged between the inner edges of the lenses, and hinged members mounted on the post and secured to the lenses, said hinged members being constructed with stops to limit the movement of the lenses toward each other.

"2. The combination of a nose piece, a post rising therefrom, a cross bar at the end of the said post, hinge members mounted on the ends of said cross bar and provided with projections adapted to impinge against said cross bar, and lenses carried by said hinge members."

These claims relate, it will be seen, to lenses mounted pivotally, each one at its inner end, to a connecting cross bar mounted on the upper end of the supporting post rising from the nose piece, the hinged members having stops or projections adapted to limit the movement of the lenses. Fig. 1 of the drawings, showing this arrangement, is as follows, viz.:

---

These claims, appellee insists, failed to present his whole invention as set out in the drawings and specification.

Fig. 4 seems to describe a device not covered by the said claims, as do also Figs. 5 and 6. Fig. 4 is as follows, and sufficiently illustrates the device claimed to have been overlooked:

*Fig. 4.*

To remedy this defect, as appellee alleges it to be, he filed his application in the Patent Office for a reissue, stating that he "verily believes that the letters patent referred to in the before mentioned petition and specification for reissue patent, and surrendered at the time of the filing thereof, are inoperative for the reason that the specification thereof is defective, and that such defect consists particularly in the restriction of the scope of the invention by the specification and in the claims of said letters patent to the employment therewith of stops to limit the movement of the lenses towards each other; and deponent further says that the errors which render such patent so inoperative arose from inadvertence, and without any fraudulent or deceptive intention on the part of deponent; that the following is a true specification of the errors which constitute such inadvertence, relied upon, viz.: The particular specification of stops to limit the movement of the lenses towards each other as a necessary part of the combination which constitute his said invention—and that such errors, so particularly specified, arose as follows: Because your deponent was entirely ignorant of the patent laws and practice, and employed counsel who were not fully instructed as to the nature of the invention and its important uses; that your deponent acted wholly under the advice of his said patent lawyers, and that he has but recently ascertained from others more experienced that his patent was defective in the particular mentioned." No change in the specification and drawings was made.

Original application for letters patent No. 946,596, wherein the reissue was sought, contained three claims, which read as follows, viz.:

"1. A connection for the lenses of shooting glasses comprising a bridge. a post rising from the bridge, and means supported on the said post for securing the lenses.

"2. The combination with the lenses of shooting glasses, of hinge members secured to the said lenses and a connection between the said hinge members arranged to limit the movement of the said members.

"3. The combination of a nose piece, a post rising therefrom, a cross bar at the end of the said post, hinge members mounted on the ends of said cross bar and provided with projections adapted to impinge against said cross bar, and lenses carried by said hinge members."

In response to rejection of claims 1 and 2 by the examiner, this applicant canceled both of them, mainly on reference to Lançon patent (French) No. 381,553. Claim 1 was then rewritten, with two limitations, viz.: (1) The use of hinged members mounted on the post carrying the nose piece; and (2) stops in connection with the hinged member adapted to limit the movement of the lenses toward each other—and then was allowed as claim 1. After reconsideration, claim 3, which was at first rejected by the examiner, was allowed as claim 2.

The reissue was granted, numbered 13,231, on May 2, 1911, claims 1 and 2 of patent No. 946,596 became claims 1 and 2 of the reissue, and claims 3, 4 and 5 were added. These latter read as follows, viz.:

"3. The combination with shooting glass lenses of a nose piece, a supporting post rising therefrom and arranged between the inner edges of the lenses,

members movably mounted upon said post, and means for securing said lenses carried by said members.

"4. In an eye protector, the combination of a nose piece, a post rising therefrom, and lens-carrying members pivotally mounted on said post.

"5. In an eye protector, the combination of a nose piece, a post rising therefrom, and lens-carrying members pivotally mounted on said post so as to bring the opposite edges of the lenses closely adjacent to said post" —and constitute the matters here involved.

The alleged infringing device is constructed under patent to Brennecke for goggles, dated November 24, 1914, and numbered 1,118,631, the four claims of which read as follows, viz.:

"1. The combination with a pair of glasses of the class described, of a readily flexible connection supporting a nose-bow and which yields to bending and twisting strains and returns the glasses to their normal relative positions.

"2. The combination with a pair of glasses of the class described, and with the nose-bow for same, of a flexible connection joining said glasses and supporting said nose-bow, said connection supporting said glasses in a definite normal position and yet serving to permit the relative angular movement of the glasses that a hinged connection for same would permit.

"3. The combination with a pair of lenses of the class described and the nose-bow for same, of a flexible connection extending uninterruptedly from lens to lens as a support for same and said nose-bow, said flexible connection having greater flexibility than said lenses.

"4. The combination with a pair of lenses of the class described and the nose-bow for same, of a flexible connection on which said nose-bow is mounted and which supports said lenses in a normal relative position to each other, said connection having greater flexibility than said lenses and permitting movement of each lens relative to the other lens in planes vertical to each other."

Fig. 1, here reproduced, will serve to illustrate the device.

Appellant denies both validity of the reissue and infringement thereof. The District Court sustained the patent and the charge of infringement and awarded an accounting.

Appellant introduced in evidence Cook's prior patents, Nos. 916,109, 936,987, 946,596, Brennecke subsequent patent, No. 1,118,631, French prior patent to Lançon, No. 381,553, and Wienrich's German patent, No. 135,062, of November 30, 1901, and others, all for eyeglasses.

The assignment of errors goes to the action of the court in sustaining the invention, upholding the validity of the reissue and decreeing infringement.

Florence King, of Chicago, Ill., for appellant.

Charles C. Linthicum and Benjamin T. Roodhouse, both of Chicago, Ill., for appellee.

Before BAKER, KOHLSAAT, and ALSCHULER, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). While we deem the validity of the reissue patent as being a close question under the statute and the authorities, by reason, among other matters, of the proceedings had in the Patent Office in connection with the canceling of original claims 1 and 2 of patent No. 946,596, we do not consider it necessary, for the disposition of the questions here presented, to decide that point. We assume, for the purposes of this proceeding, that the reissued patent is valid.

The field in which the patentee was working was very narrow. The French patent to Lançon, published in 1908, showed the pintle rising from the nose piece and having a vertical sliding movement upon the cross piece for purposes of adjustment to the eyes, and also the revoluble movement of the cross piece and lenses upon the pintle as a pivot. Wienrich, 1901, discloses glasses which may be folded, one lens upon the other, each being swung on a pivot indirectly connecting it with its particular end of the nose piece. Cook's patent, No. 936,987, shows glasses differing in no substantial respect from his patent upon which the reissue is based, and the reissue patent, except in the fact that in the former the boss rising from the nose piece fits "between the lower ends of the hinges or the lower portions of the meeting edges of the lenses." "The bridge," says the patentee, "is thereby held in proper position to aid in supporting the lenses and to cushion the same on the wearer's nose," whereas in the latter the boss is prolonged upwardly to form a vertical pintle upon which the sleeves of the hinges are pivoted, thus eliminating the pivot pin 8 connecting the hinge members of that device, and making the lenses partially adjustable. The device of patent No. 946,596 makes provision for such adjustment to the eyes as may be obtained by hinged movement, said movement being perpendicular, or at right angles to the post. This latter is the subject-matter described in the reissue, appellee insisting that the claims of patent No. 946,596 were by mistake limited to the improved hinge, including stops to limit the movement of the lenses toward each other, but making no claim to means for holding the lenses in proper position in front of the eyes.

It is apparent that claims 1 and 2 cover only the matters disclosed in figures 1, 2 and 3 of the patent No. 946,596 aforesaid.

Assuming, as above stated, that appellee was entitled to the reissue claims, the most that can be said is that he has secured a monopoly to glasses which may be adjusted to the eyes in any manner which may be attained through lenses moving perpendicularly or at right angles to the pintle. On the other hand, appellant's device is capable of indefinite relative movement with respect to the eyes by reason of the resilient means for connecting the lenses. The latter may be moved at right angles, or in any arc of a circle, or of an ellipse, or even angularly. It has no pintle, and no hinged movement. Its nose piece is almost as flexible as that of the old rubber cover patent, No. 12,924. It has the same, if not a greater, presumption of validity arising from the grant as has the reissue patent, in that it was granted after, and presumably was distinguished from, Cook; and instead of being an im-

provement of the invention defined in the patent in suit, the Brennecke patent, in our judgment, was for an independent invention in the old common field. Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689.

All things in evidence considered, we are of the opinion that the decree of the District Court should be and it is reversed, with costs, with direction to vacate the decree and dismiss the bill for want of equity.